# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMOS TURNER,<br><br>　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>　Defendant. | Civil Action No. 06-263 (CKK) |

## MEMORANDUM OPINION[1]
(May 10, 2010)

Plaintiff Amos Turner seeks reversal of the decision of Defendant Commissioner of Social Security (the "Commissioner") denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. In the alternative, Plaintiff seeks an order remanding his case to the Social Security Administration ("SSA") for a new administrative hearing. Currently pending before the Court are Plaintiff's [7] Motion for Judgment of Reversal and Defendant's [9] Motion for Judgment of Affirmance. After reviewing the parties' briefs, the administrative record, and the relevant case law, the Court shall DENY Plaintiff's motion to reverse the judgment and GRANT Defendant's motion to affirm the judgment.

## I. BACKGROUND

### A.　Legal Framework

To qualify for disability insurance benefits and supplemental security income ("SSI"), a

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Michael J. Astrue has been substituted for Jo Anne B. Barnhart as the defendant in this action.

claimant must demonstrate a disability, which is defined by the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 416(i)(1); *id.* § 1382c(a)(3)(A). In addition, a claimant seeking disability or SSI benefits must have a severe impairment that makes him unable to perform past relevant work or any other substantial gainful work that exists in the national economy. *See id.* § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Substantial gainful work activity is work activity that involves doing significant physical or mental activities and is the kind of work that is usually done for pay or profit. *See* 20 C.F.R. § 404.1472.

In making a disability determination, an Administrative Law Judge ("ALJ") is required to use a five-step sequential analysis examining (1) the claimant's recent work activity, (2) the severity and duration of the claimant's impairments, (3) whether the claimant's impairments are medically equivalent to those contained in the Listing of Impairments promulgated by the SSA, (4) the claimant's residual functional capacity and ability to perform past work, and (5) the claimant's ability to perform jobs reasonably available in the national economy. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Brown v. Barnhart*, 408 F. Supp. 2d 28, 32 (D.D.C. 2006). At the first step in the analysis, the ALJ must determine whether the claimant is working and whether the work is substantial gainful activity; if so, the claim must be denied. *See Brown*, 408 F. Supp. 2d at 32. At step two, the ALJ must determine whether the claimant's impairments are severe; if they are not, the claim must be denied. *Id.* In step three, the ALJ compares the impairments to a listing of impairments that automatically qualify as a disability under the

regulations.  If the claimant's impairments match those listed, disability is conclusively

presumed.  *Id.*  If there is no match, the ALJ proceeds to step four and determines whether the

claimant has any residual functional capacity to perform his old job.  If so, the claim will be

denied.  *Id.*  If not, the ALJ proceeds to step five and determines whether there is any other

gainful work in the national economy that the claimant could perform notwithstanding his

disability.  Although the claimant bears the burden of proof with respect to the first four steps of

the analysis, at step five the burden shifts to the Commissioner to demonstrate that the claimant

is able to perform "other work" based on his residual functional capacity, age, education, and

past work experience.  *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004).  If so, the claim

must be denied.

      B.     *Factual Background*

      Plaintiff Amos Turner is a 46-year-old man with an eleventh-grade education.

Administrative Record ("AR") at 7, 82.[2]  From 1983 through 2002, Turner was employed as an

auto technician and food server.  *Id*. at 77.  Turner was working as an automotive welder

installing mufflers when he began to experience pain in his right shoulder and back around

March 2002.  *Id.* at 76-77.  Turner claims that these injuries to his back and shoulder prevented

him from working as of August 26, 2002.  *Id.* at 76-77.  Turner's physical problems have been

diagnosed as a lumbar disc injury, chronic lumbar radiculopathy, chronic pain syndrome, and

---

[2] The extent of Plaintiff's education is unclear from the record.  Plaintiff testified at his
administrative hearing that he had a tenth-grade education, and the Motion for Reversal
corroborates that view.  *See* Pl.'s Mot. at 2; AR at 237.  However, the Motion also cites a
questionnaire filled out by Plaintiff stating that he reached grade 11, and the ALJ assessed him at
this grade level.  *See* AR at 7, 82.  Because this fact is immaterial to resolution of this case, this
Court will presume Plaintiff reached grade 11.

chronic internal derangement of his left shoulder. *Id.* at 7; *see* Pl.'s Mot. at 2. His symptoms include chronic pain in the back and shoulder, and he suffers from fatigue as a side effect of his narcotic pain medication. AR at 8.

Turner was examined by physicians at Greater Southeast Community Hospital (GSCH). The first record of Turner's injuries appears on September 17, 2002, in the treatment notes of his doctors. *See* AR at 130, 140-44. These notes indicate that Turner injured his right shoulder by "lifting heavy object [at] work." *Id.* at 130. The doctors' examination notes from that date also state that "[t]here is no evidence of a fracture, dislocation, or other bony abnormality." *Id.* at 144. Turner was prescribed anti-inflammatory medication. *Id.* at 140. In late September 2002, Plaintiff returned to GSCH complaining of lower back, shoulder, and neck pain. *See id.* at 129, 134-35. His doctor prescribed Percocet during that visit and advised against heavy lifting. *Id.* at 129. In October 2002, Plaintiff received a series of x-rays. *See id.* at 131-2-33, 136. After being diagnosed with "traumatic arthritis of the right acromioclavicular joint," Dr. Charles H. Emich performed surgery on Turner's clavicle in December 2002. *See id.* at 145.

The record indicates that beginning in 2003, Turner was examined and/or treated by several physicians at the Metropolitan Washington Orthopaedic Association & Allied Subspecialties. On March 6, 2003, Turner was examined by Dr. Rida N. Azer. *See* AR at 154-58. Dr. Azer noted that Turner's "general condition is satisfactory" and that he can "perform activities such as sitting, standing, and walking" but that he should avoid lifting or carrying objects heavier than 30 pounds. *Id.* at 154-55. Turner also received treatment from Dr. Hampton J. Jackson, Jr., for his lower back pain. On May 19, 2003, Dr. Jackson reported that Turner still complained of significant back pain and pain down the right leg and that an MRI was needed to

determine the effective treatment type for him. *See* AR at 198. Dr. Jackson opined that Turner was "not fit for any gainful employment" because he could neither "stand, walk, or sit" nor "lift, push, or pull." *Id*. at 198. Dr. Jackson continued to see Turner periodically and reiterated his view that Turner was unfit for work after examinations on September 8, 2003; October 6, 2003; November 3, 2003; March 29, 2004; May 10, 2004; June 7, 2004; October 25, 2004; January 3, 2005; and January 31, 2005; his reports repeatedly observe spinal disc injuries and, at times, recommend a discogram. *See id.* at 182, 183, 185, 188-90, 195-97, 199. In January 2004, Plaintiff visited Dr. Martin McLaren, a pain management specialist, in order to address the "persistent tenderness and spasm in [his] lower back." *Id.* at 193.

Turner's shoulder pain was treated by Dr. Melissa Yadao. Dr. Yadao diagnosed a tear in Turner's rotator cuff on February 3, 2004, noting that Turner would be "disabled from performing his duties" until March 2, 2004. AR at 161-62. However, on August 10, 2004, after a review of diagnostic studies, Dr. Yadao wrote that she "d[id] not see a rotator cuff tear." *Id.* at 202. Dr. Yadao also assessed Turner's residual functional capacity in August, reporting that his injuries created exertional, postural, manipulative, visual, communicative and environmental limitations. *Id.* at 165.

On April 30, 2005, Turner was involved in an automobile accident which resulted in the termination of his workers' compensation benefits. *Id.* at 243. According to Dr. Jackson, there was "no permanent additional injury to [Turner's] back as a result of the incident," but Dr. Jackson again stated that Plaintiff was "not fit to work" after a June 2005 evaluation. *Id.* at 178. On May 16, 2005, Dr. Jackson had observed that Turner's injuries had "gotten a bit better and he does not hurt at all." *Id.* at 179. Nevertheless, in that same report he recommended surgery for

Turner's lumbar disc injury, chronic lumbar radiculopathy, chronic pain syndrome and chronic internal derangement, and advised that Turner "continue on with absolute rest and medication." *Id.*

C.    *Turner's Application for Social Security Benefits*

Turner filed an application with the Social Security Administration for disability insurance benefits and supplemental security income on November 12, 2002. AR at 16, 70. Turner's disability-benefits application was first denied by letter on April 7, 2003, and again on reconsideration in a September 9, 2004 letter. *Id.* at 29-30, 36-37; *see id.* at 37 ("We have determined that your condition is not severe enough to keep you from working.") Turner requested a hearing before an Administrative Law Judge on November 3, 2004. *Id.* at 41. That hearing was held on August 12, 2005, with ALJ Larry K. Banks presiding. *Id.* at 63. The ALJ heard testimony from Turner as well as from Leonard Perlman, Ed.D., an impartial vocational expert ("VE"). *Id.* at16. Turner was represented by counsel at the hearing. *Id.*

Turner testified that in early 2002, an automotive drill he used for welding got "stuck into the manifold" and "slung [him] around," causing him to break his collarbone and injure his back and shoulder. AR at 239. Between the time of his injury and the time of the hearing, Turner did not return to work because of the "severe pain" and his doctors' recommendations that he not work. *Id.* Turner testified that Dr. Charles Emich[3] performed surgery on his right shoulder in 2002 and sent him to an orthopedist, Dr. Hampton Jackson. *Id.* at 240. During the hearing, Turner described his symptoms as "a numbness in [his] leg from [his] knee all the way down to

---

[3] The transcript from the administrative hearing refers to Turner's surgeon as "Charles Smith," but this is likely a transcription error in light of the evidence in the record indicating that Dr. Charles Emich was Turner's surgeon.

[his] foot . . . and burning," which prevent him from walking more than two minutes before he needs to sit down. *Id.* at 245. Turner also testified that (1) sitting caused a "numbness in [his] butt," (2) bending down caused problems with his back, (3) doctors advised him not to lift anything, (4) persistent pain made it hard for him to sleep and required him "to lie down or rest for several hours throughout the day," and (5) his medication caused memory loss. *Id.* at 20, 247-50. However, Turner believed he could lift fifteen pounds with his left hand. *Id.* at 247.

At the hearing, the ALJ presented Turner's occupational profile as a person of the same "age, education and work experience" who could "perform no more than light exertional activity" with "a sit/stand option" and who should avoid climbing, crawling, crouching, shoulder-lifting and reaching with the right arm but could "stoop[] . . . on an occasional basis" and should perform "only simple, routine, unskilled tasks." AR at 256. After hearing this description, vocational expert Leonard Perlman testified that Turner could be an "inspector" or an "office assistant." *Id.* at 256-57. The ALJ then inquired about sedentary jobs for a person with the above-mentioned limitations, and the VE suggested "security monitor" or "surveillance system monitor", "grader or sorter," "film development assistant,"[4] and "order clerk" in the food and beverage industry. *Id.* at 257-58. The ALJ asked the VE whether his testimony was consistent with the *Dictionary of Occupational Titles* (U.S. Dep't of Labor, 4th ed. rev. 1991) (hereinafter, "DOT"), a publication that contains descriptions of thousands of jobs that exist in the United States. *See id.* at 259. The VE testified that his testimony was consistent with the DOT, except with respect to the "sit/stand option," which the VE explained was based on his own experience

---

[4] The ALJ described this job as a "film developer assistant" in his written decision. *See* AR at 23.

and background in the field of vocational rehabilitation for about 40 years.  *Id.*

D.    *The ALJ's Decision*

In a decision dated September 10, 2005, the ALJ denied Turner's request for benefits, finding that Turner did not qualify as disabled according to the Social Security Act and its regulations.  *See* AR at 23.  The ALJ followed the five-step analysis required for disability determinations.  First, the ALJ found that Turner had not engaged in substantial gainful activity since August 26, 2002.  *Id.* at 18; *see* 20 C.F.R. 404.1520(b) & 416.920(b).  Second, the ALJ found that Turner suffered from two severe impairments: disorders of the back (discogenic and degenerative), and traumatic arthritis of the right shoulder.  AR at 18.  Third, the ALJ found that Turner's impairments did not "meet[] or medically equal[] one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1, Regulations No. 4" because his arthritis did not prevent him from "ambulat[ing] effectively . . . [or] perform[ing] fine and gross movements" and his back disorders did not compromise the nerve root or spinal cord.  AR at 19.

Considering the entire record before him including Turner's medical records, the ALJ determined that Turner had a residual functional capacity to perform "sedentary exertional level work with a sit/stand option (stand 15-30 minutes before alternating to sitting for 15-30 minutes)."  AR at 19.  The ALJ noted that Turner must avoid: (1) "crawling, crouching and climbing of ropes/ladders/scaffolds," (2) "above shoulder lifting or repetitive frequent reaching with the right upper extremity," and (3) "work around dangerous machinery or unprotected heights."  *Id.*  However, the ALJ believed Turner was capable of "other postural movements such as stooping" as well as "lift[ing] 15 pounds with his left hand."  *Id.* at 19-20.  He concluded that Turner "should be able to perform work that does not require prolonged standing or walking."

*Id.* at 20.  With respect to mental impairments, the ALJ stated that Turner "has moderate difficulties in concentration, persistence or pace" and limited him to "performing simple, routine unskilled tasks."  *Id.* at 19.  In step four of the analysis, the ALJ held that these combined limitations would prevent Turner from performing his past relevant work as a food service worker or an automotive technician.  *Id.* at 22.

The ALJ reviewed Turner's testimony regarding his symptoms, including pain from standing and walking for short periods and sitting for more than 40 minutes at a time.  *See* AR at 20.  Although the ALJ agreed that Turner's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," he found the testimony regarding the intensity, duration, and limiting effects of the symptoms to be "credible only to the extent of the residual functional capacity determined," doubting especially that Turner "need[ed] to lie down or rest for several hours throughout the day" based on evidence from the record.  *Id.*  The ALJ noted that Turner had indicated on his Disability Report-Appeal that his medical condition affected his ability to care for his own needs because it is hard for him to stand or walk too long on his right foot and that his self care is otherwise independent.  *See id.*  The ALJ also noted that Turner's medication reduces his pain to mild to moderate levels with no significant side effects.  *Id.*  Thus, the ALJ concluded, Turner should be able to perform work that does not require prolonged standing or walking.  *Id.*  The ALJ accorded significant weight to the opinion of the GSCH physician who initially treated Turner in September 2002 and who indicated that Turner should not engage in strenuous activity.  *Id.*  The ALJ found that this opinion was "consistent with the physician's findings on physical examination."  *Id.*  The ALJ also accorded weight to Dr. Azer's opinion that Turner could sit, stand, and walk, which the ALJ found was consistent

with the objective medical evidence showing that Turner's range of motion was satisfactory and that he was able to ambulate without an assistive device and had no limitations on the use of his hands, arms, or fingers. *Id.* at 20-21.

The ALJ also gave significant weight to the opinion of a state agency medical consultant who reviewed Turner's medical records. *See id.* at 21-22; AR at 168-75 ("Physical Residual Functional Capacity Assessment"). The medical consultant found that Turner's exertional limits to be: occasional lifting of 20 pounds; frequent lifting of 10 pounds; standing/walking at least 2 hours in an 8-hour workday; sitting about 6 hours in an 8-hour workday; avoiding pushing/pulling of the arms and legs. *See* AR at 169. Turner's postural limits were deemed to be: occasional climbing of ramps/stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; and no crawling. *Id.* at 170. The medical consultant found that Turner should not reach above 155 degrees above his right shoulder. *Id.* at 171. The medical consultant concluded that Turner "should be able to perform sedentary work." *Id.* at 174. The ALJ found the consultant's opinion persuasive because he "provided specific reasons for his opinion including findings on physical examination and MRI results" and his opinion is "consistent with the record when viewed as a whole." *Id.* at 21-22.

The ALJ gave little weight to the opinions of Drs. Jackson and Yadao. *See* AR at 21. The ALJ noted that Dr. Jackson's initial opinion in December 2003 that Turner was incapable of standing, walking, sitting, lifting, pushing, pulling, and bending enough for gainful employment was not supported by specific objective medical evidence. *See id.* The ALJ noted that the opinion was very broad and appeared to be made to a District of Columbia government official for the purpose of obtaining benefits for Turner. *Id.*; *see also* AR at 199. The ALJ also found

that Dr. Jackson's conclusions were not supported by his treatment notes and findings in the record. *Id.* at 21. The ALJ similarly found Dr. Yadao's opinions to be unsupported by objective medical evidence. The ALJ found that Dr. Yadao's opinion in February 2004 that Turner was disabled was given without a thorough examination and without critical examination results. *Id.* The ALJ found that Dr. Yadao's second opinion in June 2004 that Turner was unable to work was not supported by her own examination findings, which indicated that Turner had active forward elevation of 155 degrees and external rotation of 55 degrees with 5/5 rotator cuff strength and a good range of motion in his neck. *Id.*

Relying on the testimony of the vocational expert, the ALJ concluded at step five of the analysis that Turner was not "disabled" within the meaning of the Social Security Act because, given his age, education, work experience, and RFC, he could perform jobs that existed in significant numbers in the national economy. AR at 22-23. Therefore, the ALJ concluded that Turner was not entitled to disability insurance benefits or supplemental security income under the Social Security Act. *Id.* at 23.

Turner requested review of the ALJ's decision before the Appeals Council on November 10, 2005. AR at 7, 24-25. On January 12, 2006, the Appeals Council denied the request for review, finding no reason to reconsider the ALJ's decision. *Id.* at 4-6. That denial acted as the final decision of the Commissioner. Turner subsequently filed this action.

## II. LEGAL STANDARD

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (quoting *Diabo v. Sec'y of*

*HEW*, 627 F.2d 278, 281 (D.C. Cir. 1980)).  The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Inability to engage in substantial gainful activity not only includes the individual's inability to do his previous work, but requires as well an inability, "considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  *Id.* at § 423(d)(2)(A).  In making this determination, the ALJ is to consider (1) medical data and findings, (2) expert medical opinions, (3) subjective complaints, and (4) the plaintiff's age, education, and work history; however, "[t]he expert opinions of a treating physician are binding on the fact finder unless contradicted by substantial evidence to the contrary."  *Davis v. Heckler*, 566 F. Supp. 1193, 1196 (D.D.C. 1983) (citing cases).

A court will not disturb the determination of the Commissioner if it is based on substantial evidence in the record and the correct application of the relevant legal standards.  42 U.S.C. §§ 405(g), 1383(c); *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).  "The test 'requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence.'"  *Bulter*, 353 F.3d at 999 (quoting *Fla. Mun. Power Agency v. FERC*, 315 F.3d 362, 365-66 (D.C. Cir. 2003)).

In reviewing an administrative decision, a court may not determine the weight of the evidence, nor substitute its judgment for that of the Commissioner if his decision is based on substantial evidence. *Butler*, 353 F.3d at 999; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Instead, the reviewing court must carefully scrutinize the entire record to determine whether the Commissioner, acting through the ALJ, has analyzed all the evidence and has sufficiently explained the weight he has given to obviously probative material. "Because the broad purposes of the Social Security Act require a liberal construction in favor of disability, the court must view the evidence in the light most favorable to the claimant." *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (citing *Davis v. Shalala*, 862 F. Supp. 1, 4 (D.D.C. 1994)). The reviewing court must also determine whether credible evidence was properly considered. *Id.* (citing *Dionne v. Heckler*, 585 F. Supp. 1055 (D. Me. 1984)). Importantly, an ALJ cannot merely disregard evidence which does not support his conclusion. *Dionne*, 585 F. Supp. at 1060. A reviewing court should not be left guessing as to how the ALJ evaluated probative material, and it is reversible error for an ALJ to fail in his written decision to explain sufficiently the weight he has given to certain probative items of evidence. *Martin*, 118 F. Supp. 2d at 13 (citing *Davis*, 862 F. Supp. at 2).

### III. DISCUSSION

Turner alleges three reversible errors by the ALJ. He alleges that the ALJ: (1) failed to properly consider the opinion of Turner's treating physician; (2) failed to adequately develop the administrative record; and (3) erroneously relied upon the testimony of the vocational expert that Turner could perform occupations in significant numbers in the national economy. *See* Pl.'s Mot. at 3, 8, 13. The Court shall examine each of these theories.

A.      *Weight of Medical Opinions*

Turner claims that the ALJ erred by failing to accord controlling weight to the opinions of Turner's treating physician, Dr. Jackson.[5]  The D.C. Circuit espouses a "treating physician rule" that creates a presumption in favor of treating physicians' opinions of claimants' conditions.  *See Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987) ("Because a claimant's treating physicians have great familiarity with his condition, their reports must be accorded substantial weight.") However, this presumption can be rebutted—and a fact-finder will not be bound—if the treating physician's opinion is "contradicted by substantial evidence."  *Butler v. Barnhart*, 353 F.3d at 1003 (D.C. Cir. 2004) (internal quotations omitted); *see also* Social Security Ruling (SSR) 96-2p, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 61 Fed. Reg. 34,490, 34,491 (July 2, 1996) ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it . . . is inconsistent with the other substantial evidence in the case record").  If an administrative decision departs from the recommendations of a treating physician, the ALJ bears the burden of explaining why he has rejected the treating physician's opinion and how the doctor's assessment is "contradicted by substantial evidence." *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993).  When determining the appropriate amount of weight to accord a treating physician's opinion, adjudicators must take into account a list of factors set forth in the Code of Federal Regulations.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  These factors include (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the amount of evidence supporting the physician's opinion; (4) the consistency of the opinion with the record as

_____

[5] Turner does not argue that the ALJ erred by discounting the opinion of Dr. Yadao.

a whole; (5) whether the physician is a specialist giving an opinion about his area of specialty; and (6) other factors brought to the adjudicator's attention. *Id.* §§ 404.1527(d), 416.927(d). Turner argues that the ALJ's decision is deficient because he failed to analyze these factors or sufficiently explain why he discounted Dr. Jackson's opinions.

The Commissioner argues that the ALJ "thoroughly discussed Dr. Jackson's opinion" and properly accorded his opinion little weight because it was unsupported by objective medical evidence. Def.'s Mot. at 24. The Court agrees with the Commissioner and finds that the ALJ satisfied his burden to produce substantial evidence contradicting Dr. Jackson's opinions by drawing on the physician's own treatment notes and the opinions of other doctors. *See* AR at 21. Contrary to Turner's assertions, the ALJ was under no obligation to specifically enumerate each of the six factors described in the Social Security regulations; the regulations require only that "good reasons" be provided for the weight given a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(d)(2), 404.927(d)(2). Here, the ALJ specifically explained why he believed that Dr. Jackson's opinions were not supported by objective medical evidence, which is one of the six factors discussed above, and explicitly stated that he "considered opinion evidence in accordance with the requirements of 20 CFR §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, and 96-6p." *See* AR at 20-21. Thus, the ALJ fulfilled his duty to "evaluate every medical opinion" by acknowledging Dr. Jackson's opinions, and he fairly exercised his discretion to discount those opinions by providing good reasons for doing so. *See* 20 C.F.R. 404.1527(d); *see also Williams*, 997 F.2d at 1499 ("That the ALJ did not expressly state his reason for not applying the treating physician rule is of no moment because he noted the contradictory evidence in the record, which record supplies the reason.")

One reason that the ALJ discounted Dr. Jackson's opinions was because the doctor's "Medical Source Statement," which describes his opinion of Turner's residual functional capacity, *see* AR at 215-18, was "not supported by his treatment notes." *See* AR at 21. Dr. Jackson's treatment notes contained numerous medical findings that conflicted with the conclusion that Turner could not work. For example, Dr. Jackson observed in May 2005 that Turner was "not hurt at all." *See* AR at 179-80. Dr. Jackson earlier noted in October 2004 that Turner could walk without a cane and that medication reduced his pain to a moderate level.[6] AR at 185. This Circuit considers a treating physician's opinions to be non-binding when they contain conclusions coupled with discrepant observations, as is the case here. *See Williams*, 997 F.2d at 1499 (finding that contradictions in treatment notes negate the treating physician rule). Furthermore, because Dr. Jackson's assessments of employability were conclusory in nature and not culled from objective medical evidence, they did not carry binding force under the Social Security regulations. *See* 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled").

The ALJ was also justified in placing limited weight on Dr. Jackson's opinions because of the conflicting evidence in the record, including the opinion of Dr. Azer, who was also one of Turner's treating physicians, albeit for a more limited period. The ALJ relied on Dr. Azer's opinion that Turner exhibited satisfactory range of motion and muscle strength and could "sit, stand, and walk"—conclusions the ALJ found were supported by objective medical evidence. *See* AR at 20-21. Dr. Azer's opinion was made in March 2003, just two months before Dr.

_____

[6] Dr. Jackson's notes indicate that with medication, Turner's pain levels are around a 4 or 5 out of 10, which corresponds to "moderate" pain on medical pain indices.

Jackson opined that Turner could not "stand, walk or sit enough for gainful employment," yet Dr. Jackson did not explain why Turner's condition might have deteriorated or in any way reference Dr. Azer's earlier assessment, despite the fact that the two doctors worked in the same practice group. *See id.* at 198. The ALJ also relied on the opinion of a medical consultant who reviewed Turner's medical records and concluded that Turner was "capable of performing light level work." *Id.* at 21-22.[7] The presence of views opposed to Dr. Jackson's created a situation "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). In such situations, "the responsibility for that decision falls on the [Commissioner] (or [his] designate, the ALJ)." *Id.* The ALJ reasonably and appropriately fulfilled his responsibility by weighing the latter opinions more heavily, because, in his view, they comported with objective medical evidence. Altogether, "the ALJ acknowledged all of the medical opinions in the record, explained why he viewed certain evidence as more credible than other evidence, and adequately explained why he did not give 'controlling weight' to the . . . [treating physician's] assessments." *Hartline v. Astrue*, 605 F. Supp. 2d 194, 209 (D.D.C. 2009). Therefore, the Court finds that the ALJ did not err in failing to give controlling weight to the opinion of Dr. Jackson.[8]

---

[7] The fact that the ALJ ultimately concluded that Turner should be limited to "sedentary" rather than "light" work demonstrates that the ALJ did not give controlling weight to the opinion of the medical consultant.

[8] Turner also argues that the ALJ ignored Dr. Jackson's findings that Turner had demonstrated tenderness and spasm in his lower back, decreased range of motion, positive straight leg raising tests, hypothesia, weakness, and disc injuries verified by MRI examination accompanied by chronic pain. *See* Pl.'s Mot. at 10-11. However, the ALJ's decision explicitly takes notice of Dr. Jackson's findings of tenderness and spasm in the lower back, weakness, and disc injuries. *See* AR at 21. The record shows that the ALJ expressly considered Dr. Jackson's opinions and declined to give them controlling weight.

*B.      Development of the Administrative Record*

Turner next claims that the ALJ failed to adequately develop the administrative record because he did not contact Dr. Jackson in order to obtain additional evidence regarding his opinion that Turner was unfit for work. *See* Pl.'s Mot. at 13-14. "[A]n administrative law judge has the affirmative duty to investigate fully all matters at issue and to develop the comprehensive record requisite for a fair determination of disability." *Poulin*, 817 F.2d at 870. In *Poulin*, the Court explained that an ALJ violates this duty when he fails to take steps to obtain all the relevant medical records and then makes a determination based on the insufficiency of evidence. *Id.* at 872-73. In *Poulin*, the ALJ had failed to obtain medical records that were known or believed to exist. *See id.* at 872. The ALJ "cannot rely [only] on the evidence submitted by the claimant when that evidence is inadequate." *Fleming v. Barnhart*, 284 F. Supp. 2d 256, 272 (D. Md. 2003) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). However, the ALJ need not undertake an additional investigation where there is no obvious gap or defect in the administrative record. *See id.* (explaining that the record must be supplemented only where evidentiary gaps that "result in unfairness or clear prejudice"); *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") Moreover, pursuant to Social Security regulations, recontact with a treating physician is necessary only when the evidence is inadequate to determine whether the claimant is disabled and the physician's report contains some conflict or ambiguity that must be resolved or is missing necessary information. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e).

In the present case, Turner does not argue that there are any missing records or other relevant evidence that was not presented to the ALJ. Rather, he contends that the ALJ should have subpoenaed Dr. Jackson to have him explain the bases of his opinions before discounting them. However, the ALJ is not required to act as Turner's advocate and present the best possible case for him. As the Seventh Circuit has explained:

> It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability. . . . While it is true that the ALJ has a duty to make a complete record, this requirement can reasonably require only so much. As this court noted in *Kendrick v. Shalala*, "[t]he difficulty is that no record is 'complete'-one may always obtain another medical examination, seek the views of one more consultant, wait six months to see whether the claimant's condition changes, and so on. Taking 'complete record' literally would be a formula for paralysis." *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir.1993).

*Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004). Here, the record shows that the ALJ had access to all the information necessary to make a disability determination; his decision relied on the opinions of numerous doctors and all of Turner's relevant medical records. When asked at the hearing if he had any objections to the case file, Turner's attorney stated he had none. *See* AR at 236. Although Turner contends that the ALJ's decision is based on ambiguities or conflicts in Dr. Jackson's reports, the record as a whole was sufficient to enable the ALJ to make an informed ruling as to whether Turner was disabled. Therefore, the Court finds that the ALJ did not err by failing to develop the administrative record.

C. *Reliance on the Vocation Expert's Testimony*

Turner's third claim is that the ALJ's decision was unsupported by substantial evidence because he erroneously relied on improper testimony by the vocational expert. Pl.'s Mot. at 3-8. According to Turner, the jobs proffered by the VE at the administrative hearing are beyond his

capabilities and are not properly reflected in the *Dictionary of Occupational Titles*. Because the ALJ relied solely on the VE's testimony at the final stage of his analysis, Turner claims that the ALJ's ultimate decision lacks evidentiary support. For the reasons stated below, the Court shall dismiss Turner's final argument and uphold the ALJ's decision.

Social Security regulations state that in determining whether there are jobs which exist in significant numbers in the national economy that a claimant can perform based on his residual functional capacity, an ALJ may consider the testimony of a vocational expert. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e) ("If the issue in determining whether you are disabled is whether your work skills can be used in other work and the specific occupations in which they can be used . . . we may use the services of a vocational expert . . . ."); *see also Brown v. Barnhart*, 408 F. Supp. 2d 28, 33 n.5 (D.D.C. 2006) ("An administrative law judge may base his decision on the testimony of a vocational expert.") "Testimony of a VE constitutes substantial evidence for purposes of judicial review where his opinion is based on consideration of all the evidence in the record and is in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Prunty v. Barnhart*, No. 04-038, 2005 WL 1926611, at *3 (W.D. Va. Aug. 9, 2005), *cited with approval in Brown*, 408 F. Supp. 2d at 33 n.5.

When relying on VE testimony, however, an ALJ must ensure that the VE's statements are consistent with the *Dictionary of Occupational Titles*. Specifically, Social Security Ruling 00-4p states that

> Occupational evidence provided by a [vocational expert] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between [vocational expert] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the [vocational expert] evidence to support a determination or decision about whether the

claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Social Security Ruling (SSR) 00-4p, Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 65 Fed. Reg. 75,759, 75,760 (Dec. 4, 2000) ("SSR 00-4p"). A vocational expert's testimony will be regarded as consistent with the DOT if there are one or more jobs that both the VE and DOT agree can be performed by a claimant. *See Brown*, 408 F. Supp. 2d at 36 ("When an expert testifies that a claimant can perform multiple jobs and at least one of those jobs does not conflict with the DOT . . . a decision by the SSA based on the expert's testimony is supported by substantial evidence."); *see also Rutherford v. Barnhart*, 399 F.3d 546, 557-58 (3d Cir. 2005) (affirming decision of the SSA where some, but not all, of the occupations listed by the vocational expert were in conflict with the DOT). In cases where a claimant alleges conflicts between VE testimony and the DOT, the Commissioner bears the burden of proving that at least one job named by the VE can be performed by the plaintiff, after taking into account the impairments enumerated by the ALJ. *See Brown*, 408 F. Supp. 2d at 32, 36.

In this case, the ALJ found that Turner was not "disabled" based on the vocational expert's testimony that there are at least three occupations in the national economy that Turner could perform given his limitations, which restrict him to "sedentary" work involving "simple, routine unskilled tasks." AR at 22-23. The examples given by the VE at the hearing were "sorter/grader," "film development assistant," and "order clerk (food/beverage)." *See* AR at 23, 257-59. Turner argues that the VE's testimony conflicts with the DOT because none of these jobs as described in the DOT can be performed by a person with Turner's limitations. *See* Pl.'s

Mot. at 4.  More broadly, he suggests that, according to the DOT, no jobs exist for an individual

with Turner's physical impairments who can perform only sedentary work that is simple, routine

and unskilled.  *See* Pl.'s Opp'n at 9 ("a search of <u>The Dictionary of Occupational Titles</u> with

[Turner's occupational] search criteria reveals that no occupations exist which correspond to

these criteria").  The question for the Court is whether the vocational expert's testimony conflicts

with the DOT, and if so, whether there is an adequate explanation on the record for the

discrepancy.  Therefore, the Court shall examine the occupations described by the VE and

determine whether there is an actual conflict with the DOT.

The vocational expert testified that one type of a job that Turner could perform would be

as a "grader or sorter."  *See* AR at 258.  The VE testified that examples of this job would be

sorting color-coded wires or sorting nuts from bolts, and that this job is capable of being

performed with a single upper limb.  Turner argues that the VE's testimony is inconsistent with

the DOT because no such occupation is listed in the DOT.  In his motion for reversal, Turner

explains that a search of the DOT for unskilled sedentary positions involving sorting or grading

reveals only one occupation, "nut sorter," in which the worker "[r]emoves defective nuts and

foreign matter from bulk nut meats."  *See* DOT § 521.687-086.  Turner notes that this job, which

requires frequent reaching, handling, and fingering, is not the occupation described by the VE

and there is no evidence that this job exists in significant numbers in the national economy.  *See*

Pl.'s Mot. at 7.  The Commissioner does not dispute that the VE was not referring to the job of

"nut sorter" but argues that the VE's testimony that there are grader or sorter jobs suitable for

Turner in the national economy is not inconsistent with the DOT.

There is no requirement that a vocational expert identify every job by a specific reference to the DOT. Indeed, SSR 00-4p specifically states that

> Evidence from VEs . . . can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. . . . Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's . . . experience in job placement or career counseling.

> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE . . . or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT.

*See* 65 Fed. Reg. at 75,760; *see also Haas v. Barnhart*, 91 F. App'x 942, 948 (5th Cir. 2004) (rejecting claim that a vocational expert must identify DOT numbers for positions identified). In this case, the VE mentioned sorting nuts and bolts or color-coded wires as *examples* of jobs in the category of grader/sorter. In his motion for affirmance, the Commissioner identifies four occupations listed in the DOT that involve sedentary, unskilled work: (1) "dowel inspector" (DOT § 669.687-014); (2) "cigarette-making-machine catcher" (DOT § 529.666-014); (3) "button reclaimer" (DOT § 734.687-042); and (4) "loader, semiconductor dies" (DOT § 726.687-030).[9] Each of these occupations involves some form of grading and/or sorting activity, and each is defined as having a "specific vocational preparation" level of 2, which corresponds to "unskilled work." *See* SSR 00-4p, 65 Fed. Reg. at 75,760.

Turner objects to these four occupations on the grounds that (1) they were not identified by the VE; (2) they do not entail the performance of the same activities testified to by the VE; (3) there is no evidence that these occupations exist in substantial numbers in the national economy;

---

[9] The Commissioner suggests that Turner's search of the DOT, which revealed only the occupation of "nut sorter," was overly restrictive. *See* Def.'s Reply at 2.

and (4) they represent an improper post-hoc rationalization of the ALJ's decision.[10]  *See* Pl.'s

Opp'n at 2-3.  However, as explained above, the VE's testimony was intended to be illustrative

of the types of activities that occur in a sorter/grader job, not exhaustive.  The VE's testimony is

not inadequate merely because it fails to align perfectly with the listings in the DOT.  *See Carey*

*v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000) ("[A]ll kinds of implicit conflicts are possible

[between the DOT and a VE's testimony] and the categorical requirements listed in the DOT do

not and cannot satisfactorily answer every such situation.").  Although the VE did not identify

any of these four occupations specifically in his testimony, the listing of these occupations in the

DOT demonstrates that there is no actual conflict between the VE's testimony and the DOT.[11]

Thus, the ALJ was not required to resolve any inconsistency between the DOT and the VE's

testimony that there are grader/sorter jobs that Turner could perform based on the limitations

described by the ALJ and that there are 1050 such positions regionally and 68,000 nationally.

That amount is sufficient to support the ALJ's finding that a significant number of such jobs

exist.  *Compare Weiler v. Apfel*, 179 F.3d 1107, 1110-11 (8th Cir. 1999) (holding 32,000 jobs

nationwide sufficient).  Accordingly, the ALJ's decision based on the VE's testimony is

supported by substantial evidence, and the Court shall affirm the decision of the ALJ.

---

[10] Notably, Turner does not argue that he is incapable of performing these jobs.

[11] In addition to the VE's explicit testimony that his opinion was consistent with the DOT, the finding of no conflict is also supported by the fact that Turner's counsel did not argue at the hearing that there were any conflicts between the DOT and the VE's testimony.  Some courts have considered this to be a significant factor in determining whether an actual conflict exists. *See, e.g.*, *Carey*, 230 F.3d at 146-47 ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.")

Because the VE's testimony regarding the grader/sorter position is independently adequate to justify the ALJ's decision, the Court need not analyze whether there are inconsistencies between the DOT and the VE's testimony regarding the occupations of "film development assistant" and "order clerk."

## IV. CONCLUSION

Based on the foregoing review of the relevant law and the administrative record, the Court finds that the Administrative Law Judge applied the correct legal standards when he denied Turner's claim for disability insurance benefits and supplemental security income and that his conclusions are supported by substantial evidence. The Court shall therefore DENY Plaintiff's Motion for Judgment of Reversal and GRANT Defendant's Motion for Judgment of Affirmance. An appropriate Order accompanies this Memorandum Opinion.

Date:   May 10, 2010

_/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge